UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ELOY XOCHITEMOL, individually and on behalf of others similarly situated,

        Plaintiff,

   -against-

NEW MULAN LLC (D/B/A NEW MULAN), QUN YAO , WEI YU A/K/A WENDY YU , MARIA GRIMALDI RAMOS , and RAFAEL DOE,

        Defendants.
---------------------------------------------------------------X

**22-cv-1899
DECLARATION OF CLELA ERRINGTON IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

  Clela Errington, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

  1. I represent Plaintiff Eloy Xochitemol ("Plaintiff"), in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations.

  2. I submit this affirmation in support of Plaintiff's application for a default judgment against New Mulan LLC, Qun Yao, and Wei Yu a/k/a Wendy Yu.

Procedural History

  3. Plaintiff commenced this action by filing the Complaint ("Complaint") and associated documents on April 4, 2022. A copy of the Complaint in this case is annexed hereto as Exhibit 1.

  4. This is an action for unpaid minimum wages, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. See Ex. 1.

5. The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). *See* Ex. 1.

6. A summons and copy of the Complaint was properly served on defendant Qun Yao.on April 22, 2022. Copies of the Affidavit of Service on defendant Qun Yao are attached hereto as Exhibit 2.

7. A summons and copy of the Complaint was properly served on defendant Wei Yu a/k/a Wendy Yu.on April 22, 2022. Copies of the Affidavits of Service on defendant Qun Yao are attached hereto as Exhibit 3.

8. A summons and copy of the Amended Complaint was properly served on defendant New Mulan LLC on April 6, 2022. A copy of the Affidavit of Service on New Mulan LLC is attached hereto as Exhibit 4.

9. Upon information and belief, New Mulan LLC, being a corporation organized and existing under the laws of the State of New York, and defendants Qun Yao and Wei Yu a/k/a Wendy Yu, are neither infants nor incompetent persons nor in the active service of the United States military.

10. Plaintiff moved for entry of default on May 24, 2022. The Clerk of the Court then noted default against Defendants on June 1, 2022. True and correct copies of the Clerk's Certificates of Default is attached hereto as Exhibit 5.

11. The declaration of Eloy Xochitemol (Plaintiff Dec.) in support of this motion for default judgment is annexed as Exhibit 6.

Statement of Facts Supporting Entry of Judgment

2

12. As alleged in the Complaint and as stated in Plaintiff's affidavit, Defendants. own(ed), operate(d), and control(led) a Chinese restaurant located 136-17 39th Ave., Flushing, NY 11354, under the name New Mulan

13. Plaintiff is former employee of Defendants. (Complaint ¶ 4, Plaintiff Dec. ¶ 3).

14. Defendants had the power to hire and fire Plaintiff, controlled Plaintiff's terms and conditions of employment, and determined the rate and method of Plaintiff's compensation. (Complaint ¶ 32; Plaintiff Dec. ¶ 5).

15. Upon information and belief, Defendants had a gross annual volume of sales of over $500,000.00. (Complaint ¶ 33).

16. Upon information and belief, Defendants were directly involved in interstate commerce. (Complaint ¶ 34).

17. Defendants regularly required Plaintiff to work without paying him minimum wage overtime compensation, and spread of hours compensation. (Complaint ¶ 56; Plaintiff Dec. ¶14).

## Eloy Xochitemol

18. Plaintiff was employed by Defendant as a dishwasher and busboy from approximately June 1, 2016 until March of 2020, and then from May 15, 2020 until on or about March 24, 2021. (Complaint ¶ 39-40; Plaintiff Dec. ¶ 8.)

19. Plaintiff's work did not require discretion or independent judgment. (Complaint ¶ 42; Plaintiff Dec. ¶ 9).

20. From approximately June 2017 until on or about March 2020, Plaintiff Xochitemol worked varying schedules as a busboy, 6 days per week. During this time period, his work hours ranged from approximately 44 to 52 hours per week. (Complaint ¶ 44; Plaintiff Dec. ¶ 13).

21. From approximately June 2017 and on or about March 2020, every shift that Plaintiff Xochitemol worked began and ended more than ten hours apart. (Plaintiff Dec. ¶ 10)

22. From approximately May 15, 2020 until on or about March 24, 2021, Plaintiff Xochitemol worked as a dishwasher from approximately 11:00 a.m. until on or about 6:00 pm, 7 days a week (typically 49 hours per week). (Complaint ¶ 45; Plaintiff Dec. ¶ 13).

23. Throughout his employment, Defendants paid Plaintiff Xochitemol his wages in cash. (Complaint ¶ 46; Plaintiff Dec. ¶ 13).

24. From approximately June 1, 2017 until on or about November 2019, Defendants paid Plaintiff Xochitemol a fixed salary of $1,000, every two weeks. (Complaint ¶ 47; Plaintiff Dec. ¶ 14).

25. From approximately November 2019 until on or about March 2020, Defendants paid Plaintiff Xochitemol a fixed salary of $1,100, every two weeks. (Complaint ¶ 48; Plaintiff Dec. ¶ 14).

26. From approximately May 15, 2020 until on or about March 24, 2021, Defendants paid Plaintiff Xochitemol a fixed salary of $1,400, every two weeks. . (Complaint ¶ 49; Plaintiff Dec. ¶ 14).

27. Although Plaintiff Xochitemol was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Xochitemol was not compensated for all of the hours that he worked. For example, Plaintiff Xochitemol on Saturdays and Sundays he usually had to write an earlier departure time and stay working one or two hours longer. (Complaint ¶ 52; Plaintiff Dec. ¶ 18).

28. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Xochitemol regarding overtime and wages under the FLSA and NYLL. (Complaint ¶ 53; Plaintiff Dec. ¶ 18).

29.

30. Defendants did not provide Plaintiff Xochitemol an accurate statement of wages, as required by NYLL 195(3). (Complaint ¶ 54; Plaintiff Dec. ¶ 20).

31. Defendants did not provide Plaintiff with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL §195(1). (Complaint ¶ 59; Plaintiff Dec. ¶ 21).

Plaintiff is entitled to Judgment by Default

32. It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

33. Defendants have failed to file an answer or otherwise respond to the second amended Complaint, despite the time to do so have expired.

34. Thus, Plaintiff's allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiff's right to default judgment.

35. Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to

determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

36. Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiff has put forward, damages, including back pay, liquidated damages, and prejudgment interest, should be awarded in the amount of $41,173.25, and attorneys' fees and costs should be awarded in the amount of $

### Plaintiff's Damages Calculation

37. Annexed as Exhibit 7 is a chart setting out the damages Plaintiff is entitled to recover.

38. In the damages chart, the Plaintiff's wage and hour damages are based on his calculations as set forth in his Declaration.

39. The legal basis for the damages calculations within the chart are set out below.

### Back Pay

40. Under the FLSA, employees must be paid at least $7.25 per hour, and one-and-one-half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1). Thus, overtime work must be compensated at a rate of at least $10.88 per hour.

41. The applicable New York minimum wage rate was $11.00 per hour in 2017, $13.00 per hour in 2018, and $15.00 from 2019 onward. N.Y.L.L. §652. New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 146-1.4.

The regular rate is the rate an employee is regularly paid for each work hour. 12 N.Y.C.R.R. § 146-3.5.

42. The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiffs' estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

43. Here, Plaintiff was not paid minimum wage and overtime compensation at any time. Rather, Defendants paid a fixed weekly salary. When divided by the hours that Plaintiff work, this resulted in him being paid far below the statutory minimum wage. *See* Ex. 7.

44. Defendants were not entitled to take a tip credit for the following because 1) Defendants were not entitled to a tip credit because Plaintiff Xochitemol's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146). 2) Defendants failed to inform Plaintiff Marine that Defendants intended to take a deduction against his earned wages for tip income, as required by the NYLL before any deduction may be taken. 12 NYCRR 146-1.3, and 3) Plaintiff Xochitemol did not receive tips for his work as a busboy.

45. The Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by 40 pursuant to 12 NYCRR §146-3.5, which sets forth this standard for calculating effective hourly rate for employees in the hospitality industry who were unlawfully paid a fixed weekly salary. The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart. These figures are then used to calculate the "Lawful Weekly Pay"; i.e., the amount that the Plaintiff would have been entitled to were he paid correctly under the law. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavits. Back pay is calculated by subrracting the "Lawful Weekly Pay" from the "Credited Weekly Pay." *See* Ex. 7.

46. Plaintiff is thus owed $41,173.25 in unpaid minimum wage and overtime wages. As of June 14, 2022, the Plaintiff is entitled to $11,132.66.

Spread of Hours

47. Plaintiff Xochitemol is also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of minimum wage pay beyond their regular pay when the workday is begins and ends more than ten

hours apart. 12 N.Y.C.R.R. § 146-1.6; Angamarca v. Pita Grill 7 Inc., 2012 U.S. Dist. LEXIS 108322, *16-17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).

48. As set out above, plaintiff Xochitemol routinely worked shifts that began and ended more than 10 hours per day during his employment with the Defendants.

49. Plaintiff Xochitemol is entitled to $11,706.00 in unpaid spread of hours pay. As of June 14, 2022, Plaintiff is entitled to $3,745.91 in prejudgment interest on the unpaid spread of hours pay. See Exhibit 7.

Three Year Statute of Limitations Under FLSA

50. Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years. 29 U.S.C. § 255(a).

51. Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Damassia v. Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999); v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

52. In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the

9

Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defendants failed to investigate whether their compensation policy was legal. See Hardrick, 63 F. Supp. 2d at 904.

53. Moreover, the Defendants failed to post the required information concerning the minimum wage laws, paid the Plaintiff in cash, and had no system for recording, or even having Plaintiff record, his hours.

54. This deliberate decision to disregard both FLSA and New York law, as well as Defendant' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

55. As Plaintiff can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from June 3, 2020, three years before the complaint was filed. See, e.g., Decraene v. Neuhaus (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005). Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. See Godlewska v. Human Dev. Assoc., Inc., 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

<u>Wage Notice and Statement Violations</u>

56. Defendants never provided Plaintiff with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).

57. Plaintiff is therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000.00.

Liquidated Damages

58. Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

59. Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

60. Given the uncontroverted evidence of Defaulting Defendant' lack of good faith Plaintiff is entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

61. Plaintiff's total unpaid wages equal $41,173.25 all incurred after April 9th, 2011. Thus, he is entitled to 100% liquidated damages in the amount of $ 41,173.25. See Exhibit 7.

62. Plaintiff's total unpaid spread of hours damages equals $11,706.00 all incurred after April 9, 2011.

63. NYLL § 191 requires that manual laborers be paid weekly and no later than seven days after their wages are earned.

64. If an employer fails to pay manual laborers weekly, the employee is entitled to liquidated damages in the amount of the delayed pay, even if it is no longer past due. *See* Williams v Miracle Mile Props. *2 LLC*, 2022 US Dist LEXIS 19826, at *29 (EDNY 2022), citing Vega v CM & Assoc. Constr. Mgt., LLC, 175 AD3d 1144 (1st Dept 2019), isee also

65. As a dishwasher and busboy, Plaintiff Xochitemol was a manual laborer within the meaning of the New York Labor Law. Urtubia v B.A. Victory Corp., 857 F Supp 2d 476, 482 (SDNY 2012).

66. As set forth above, throughout his employment at New Mulan, Plaintiff was paid every two weeks. As such, his untimely payments during this time period are calculated by first multiplying his "Lawful Weekly Wage" by the number of weeks in the relevant time period, and then the dividing this amount by two.

67. Thus, Plaintiff Xochitemol is entitled to liquidated damages on his untimely wage payments in the amount of $52,375.00. *see* Exhibit 7.

Attorneys' Fees and Costs

68. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid

by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

69. Plaintiff incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs.

70. The costs are a total of $602.00, including a filing fee of $402.00, fees associated with serving the Defendants with the summons and complaint.

71. A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as Exhibit 8.

72. The timekeepers on this matter are indicated by the following initials and have the following rates:

   a. "CS" — Catalina Sojo, $350 per hour
   b. "CE" – Clela Errington - $350 per hour
   c. "PL" – Paralegal work, $125 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

   i. Catalina Sojo is the Managing Member of CSM Legal, P.C., formerly Michael Faillace & Associates. She graduated with a J.D. equivalent degree from Pontificia Universidad Javeriana in Bogota, Colombia, in 2017. She received a Master of Laws degree (LL.M.) from Cornell University School of Law in 2019. Prior to joining Michael Faillace & Associates in June 2020, she focused her practice in intellectual property litigation and enforcement, having worked as an associate at Baker McKenzie and as in-house counsel at Viacom CBS. Her work is billed at a rate of $350 per hour.

      ii.      Clela A. Errington is an associate at CSM Legal, P.C., formerly Michael Faillace & Associates. She is a 2012 graduate of New York University School of Law. She began her career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. She returned to litigation in 2019, joining the Jones Law Firm, P.C., and joined CSM Legal, P.C..

<u>Conclusion</u>

73.    Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendant in favor of Plaintiff in the total amount of $183,012.07 for unpaid wages, notice and recordkeeping violations, liquidated damages, prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

74.    Additionally, Plaintiff is entitled to $3,884.25 in attorneys' fees and costs. See Exhibit 8.

75.    As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

76.    No part of the judgment sought has been paid.

77.    Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's affidavit accompanying these motion papers.

78.    Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

79.     Plaintiff also requests that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

80.     The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

81.     A proposed form of judgment is attached as Exhibit 9.

82.     For the reasons stated above and in the accompanying exhibits, the Plaintiff's motion for a default judgment should be granted.

Dated: New York, New York
       June 14, 2022

                                             /s/Clela Errington
                                             Clela Errington, Esq.